## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | |
|---|---|
| Kathy Rooney, Derivatively On Behalf of WELLCARE HEALTH PLANS, INC, <br>           Plaintiff, <br><br> vs. <br><br> NEAL MOSZKOWSKI, REGINA E. HERZLINGER, KEVIN F. HICKEY, ALIF A. HOURANI, RUBEN JOSE KING-SHAW, JR, CHRISTIAN P. MICHALIK AND TODD S. FARHA, <br>           Defendants, <br>   -and- <br><br> WELLCARE HEALTH PLANS, INC., a Delaware corporation, <br><br>           Nominal Defendant. | Civil Action No. |

)))))))))))))))))))))))

**JURY TRIAL DEMANDED**

## VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY, ABUSE OF CONTROL, GROSS MISMANAGEMENT, WASTE OF CORPORATE ASSETS, AND UNJUST ENRICHMENT

Plaintiff, by his attorneys, submits this Verified Shareholder Derivative Complaint (the "Complaint") against the defendants named herein.

### NATURE OF THE ACTION

1.      This is a shareholder derivative action brought by a shareholder of WellCare Health Plans, Inc. ("WellCare" or the "Company"), on behalf of the Company against certain of its officers and directors seeking to remedy defendants' violations of state and federal law, including breaches of fiduciary duties, abuse of control, gross mismanagement, waste of corporate assets, and unjust enrichment that occurred between May 8, 2006 and the present (the "Relevant Period").

2.      Defendants' wrongful course of conduct, as described herein, has exposed the Company to civil and criminal liability and caused substantial losses to WellCare and other damages, such as to its reputation and goodwill.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over all claims asserted herein pursuant to 28 U.S.C. §1332(a)(2), because complete diversity exists between the plaintiff and each defendant, and the amount in controversy exceeds $75,000.  This action is not a collusive action designed to confer jurisdiction on a court of the United States that it would not otherwise have.  This Court also has supplemental jurisdiction pursuant to 28 U.S.C. §1367(a).

3.      This Court retains general jurisdiction over each named defendant who is a resident of Florida.  Additionally, this Court has specific jurisdiction over each named non-resident defendant because these defendants maintain sufficient minimum contacts with Florida to render jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.  WellCare maintains operations in Florida, and because the allegations contained herein are brought derivatively on behalf of WellCare, defendants' conduct was purposefully directed at Florida. Defendants' conduct arose out of Florida, where WellCare maintains its corporate headquarters. Finally, exercising jurisdiction over the named non-resident defendants is reasonable.

4.      Venue is proper in this Court pursuant to 28 U.S.C. §1391(a) because one or more of the defendants either resides in or maintains executive offices in this District, and a substantial portion of the transactions and wrongs that are the subject of this complaint, including the defendants' primary participation in the wrongful acts detailed herein, aiding and abetting, and conspiracy in violation of fiduciary duties owed to WellCare, occurred in substantial part in this District. Finally, defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

5.      Plaintiff Kathy Rooney ("Plaintiff"), a resident of New Jersey, is, and was at all times relevant hereto, an owner and holder of WellCare common stock.

6.      Nominal defendant WellCare is a corporation organized and existing under the laws of the state of Delaware with its headquarters located at 8725 Henderson Road, Renaissance one, Tampa, Florida 33634. Nominal defendant WellCare was founded in 1985 and was formerly known as WellCare Group Inc.  WellCare's common stock is traded on the New York Stock Exchange

- 2 -

under the symbol "WCG." The Company is primarily engaged in providing managed care services for government-sponsored healthcare programs, focusing on Medicaid and Medicare. The Company markets a range of Medicaid and Medicare plans, including health plans for families, children, the aged, blind and disabled, and prescription drug plans ("PDP"). As of December 31, 2006, the Company operated through a network of 50,000 physicians, 600 hospitals, and approximately 15,000 other ancillary providers and skilled nursing facilities.

7.  Defendant Todd S. Farha ("Farha") serves as WellCare's Chairman of the Board, President and Chief Executive Officer ("CEO"). Farha has served as Chairman of the WellCare Board of Directors (the "Board") since 2006. Farha has served as the Company's President and CEO since 2002. Farha previously held executive roles with Physician Corporation of America, Oxford Specialty Management, and Best Doctors, Inc. Farha is a resident of Florida.

8.  Defendant Regina E. Herzlinger ("Herzlinger") has served as a member of the Company's Board since 2003. Herzlinger also serves as a Professor of Business Administration at the Harvard Business School and has been teaching at Harvard since 1971. Herzlinger is a resident of Massachusetts.

9.  Defendant Kevin F. Hickey ("Hickey") has served as a member of the Company's Board since 2002. Hickey has also served as President of D2Hawkeye, Inc., a data-mining company, since 2006. Previously, Hickey served as the Chairman and CEO of IntelliClaim, Inc., a privately-held company that markets claims processing services to insurance payors. Hickey also previously served as Executive Vice President of Operations and Technology for Oxford Health Plans, Inc. and as a director of the American Association of Preferred Provider Organizations. Currently, Hickey also serves as a director of First Health/HealtheSolutions, Benefit Management Group, Healthaxis Inc., and HealthMarket, Inc. Hickey is a resident of Massachusetts.

10.  Defendant Alif A. Hourani ("Hourani") has served as a member of the Company's Board since 2003. Hourani also serves as Chairman and CEO of Pulse Systems, Inc. Previously, Hourani held positions with Physician Corporation of America/Data Systems, Physician Corporation of America and the Wolf Creek Nuclear Operating Corporation. Hourani is a cousin of defendant Farha. Hourani is a resident of Kansas.

11.    Defendant Ruben Jose King-Shaw, Jr. ("Shaw") has served as a member the Company's Board since 2003.  Shaw also currently serves as the President of UBC Solutions Corporation. Previously, Shaw served in the Department of the Treasury, the federal government's Centers for Medicare & Medicaid Services and the Agency for Health Care Administration of the State of Florida.  Shaw is a resident of Massachusetts.

12.    Defendant Christian P. Michalik ("Michalik") has served as a member of the Company's Board since 2002.  Michalik also currently serves as Managing Director of Kinderhook Industries.  Previously, Michalik served as a partner in Soros Private Equity Partners LLC, the private equity investment business of Soros Fund Management LLC. Michalik also previously served as an investment manager with Capital Resource Partners and as an associate at Colony Capital.    Michalik currently serves as chairman of Nurse-on-Call, Inc. and NACT Telecommunications, Inc. and as a director of NIT Group, Inc., Longevity Holdings LLC and Media Solutions Services, LLC.  Michalik is a resident of Connecticut.

13.    Defendant Neal Moszkowski ("Moszkowski") has served as a member of the Company's Board since 2002.  Moszkowski served as chairman of the Company's Board from May 2002 through October 2006.   Currently, Moszkowski serves as Co-CEO of TowerBrook Capital Partners LP, a private equity investment company.  Previously, Moszkowski served as Managing Director and Co-Head of Soros Private Equity, the private equity investment business of Soros Fund Management LLC.  Moszkowski also previously served as Vice President and Executive Director in the Principal Investment Area of Goldman, Sachs & Co. and affiliates.  Moszkowski also currently serves as a director of Bluefly, Inc., Day International Group, Inc., and JetBlue Airways Corporation. Moszkowski is a resident of New York.

14.    The defendants identified in ¶¶7-13 are referred to herein as the "Director Defendants." Defendants Farha, Herzlinger, Hickey, Hourani, Shaw, Michalik and Moszkowski are referred to herein as the "Insider Selling Defendants."  Collectively, the Director Defendants and the Insider Selling Defendants are referred to herein as the "Individual Defendants."

## DUTIES OF THE INDIVIDUAL DEFENDANTS

15.     By reason of their positions as officers, directors and/or fiduciaries of WellCare and because of their ability to control the business and corporate affairs of WellCare, the Individual Defendants owed WellCare and its shareholders fiduciary obligations of trust, loyalty, good faith and due care, and were and are required to use their utmost ability to control and manage WellCare in a fair, just, honest and equitable manner.  The Individual Defendants were and are required to act in furtherance of the best interests of WellCare and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit.

16.     Each director and officer of the Company owes to WellCare and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.  In addition, as officers and/or directors of a publicly held company, the Individual Defendants had a duty to promptly disseminate accurate and truthful information with regard to the Company's revenue, margins, operations, performance, management, projections and forecasts so that the market price of the Company's stock would be based on truthful and accurate information.

17.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of WellCare, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by the Company.  Because of their advisory, executive, managerial and directorial positions with WellCare, each of the Individual Defendants had access to adverse, non-public information about the financial condition, operations, and improper representations of WellCare.

18.     At all times relevant hereto, each of the Individual Defendants was the agent of each of the other Individual Defendants and of WellCare, and was at all times acting within the course and scope of such agency.

19.     To discharge their duties, the officers and directors of WellCare were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the financial affairs of the Company.  By virtue of such duties, the officers and directors of WellCare were required to, among other things:

(a)     manage, conduct, supervise and direct the business affairs of WellCare in accordance with all applicable law (including federal and state laws, government rules and regulations and the charter and bylaws of WellCare);

(b)     neither violate nor knowingly permit any officer, director or employee of WellCare to violate applicable laws, rules and regulations;

(c)     establish and maintain systematic and accurate records and reports of the business and affairs of WellCare and procedures for the reporting of the business and affairs to the Board and to periodically investigate, or cause independent investigation to be made of, said reports and records;

(d)     neither engage in self-dealing nor knowingly permit any officer, director or employee of WellCare to engage in self-dealing;

(e)     ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the Securities and Exchange Commission ("SEC") and the investing public;

(f)     conduct the affairs of the Company in an efficient, business like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(g)     properly and accurately guide investors and analysts as to the true financial condition of the Company at any given time, including making accurate statements about the Company's financial results and prospects, and ensuring that the Company maintained an adequate system of financial controls such that the Company's financial reporting would be true and accurate at all times; and

(h)     remain informed as to how WellCare conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, to make reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices and make such disclosures as necessary to comply with federal and state laws.

20.     Each Individual Defendant, by virtue of his or her position as a director and/or officer, owed to the Company and to its shareholders the fiduciary duties of loyalty, good faith and

the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets. The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and officers of WellCare, the absence of good faith on their part, and a reckless disregard for their duties to the Company and its shareholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to the Company. The conduct of the Individual Defendants who were also officers and/or directors of the Company during the Relevant Period has been ratified by the remaining Individual Defendants who collectively comprised all of WellCare's Board during the Relevant Period.

21.     The Individual Defendants breached their duties of loyalty and good faith by allowing defendants to cause or by themselves causing the Company to misrepresent its financial results and prospects, as detailed herein infra, and by failing to prevent employees and/or officers of the Company from taking such illegal actions. In addition, as a result of defendants' illegal actions and course of conduct during the Relevant Period, the Company is now the subject of class action litigation alleging violations of federal securities laws. As a result, WellCare has expended and will continue to expend significant sums of money. Such expenditures include, but are not limited to:

(a)     Costs incurred to carry out internal investigations, including legal fees paid to outside counsel and accountants;

(b)     Costs incurred as a result of the Company's October 26, 2007 decision to establish a special committee in response to the investigation of the Company by certain federal and state agencies and to other governmental or private proceedings;

(c)     Costs incurred in investigating and defending WellCare and certain officers in the class actions, plus potentially millions of dollars in settlements or to satisfy an adverse judgment;

(d)     Additional costs in the form of increased directors' and officers' liability and fiduciary liability insurance premiums;

(e)     Costs incurred from directing manpower to correct WellCare's defective internal controls; and

22.    The government investigations and private actions have irreparably damaged WellCare's corporate image and goodwill.  For at least the foreseeable future, WellCare will suffer from what is known as the "liar's discount," a term applied to the stocks of companies who have been implicated in illegal behavior and have misled the investing public, such that WellCare's ability to raise equity capital or debt on favorable terms in the future is now impaired.

### CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION

23.    In committing the wrongful acts alleged herein, the Individual Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with and conspired with one another in furtherance of their common plan or design.  In addition to the wrongful conduct herein alleged as giving rise to primary liability, the Individual Defendants further aided and abetted and/or assisted each other in breach of their respective duties.

24.    During all times relevant hereto, the Individual Defendants collectively and individually initiated a course of conduct that was designed to and did:

(a)    conceal the fact that the Company was improperly misrepresenting its financial results, in order to allow defendants to artificially inflate the price of the Company's shares;

(b)    conceal the fact that the Company was misreporting revenues earned through government-sponsored health care programs;

(c)    maintain the Individual Defendants' executive and directorial positions at WellCare and the profits, power and prestige that the Individual Defendants enjoyed as a result of these positions; and

(d)    deceive the investing public, including shareholders of WellCare, regarding the Individual Defendants' management of WellCare's operations, the Company's financial health and stability, and future business prospects, specifically related to the Company's financials that had been misrepresented by defendants throughout the Relevant Period.

25.    In furtherance of this plan, conspiracy and course of conduct, the Individual Defendants collectively and individually took the actions set forth herein.

26.    The Individual Defendants engaged in a conspiracy, common enterprise and/or common course of conduct commencing by at least May 8, 2006 and continuing thereafter.  During

this time the Individual Defendants caused the Company to conceal the true fact that WellCare was misrepresenting its financial results and violating federal and state laws. In addition, defendants also made other specific, false statements about WellCare's financial performance and future business prospects, as alleged herein.

27.     The purpose and effect of the Individual Defendants' conspiracy, common enterprise, and/or common course of conduct was, among other things, to disguise the Individual Defendants' violations of law, breaches of fiduciary duty, abuse of control, gross mismanagement, waste of corporate assets and unjust enrichment; to conceal adverse information concerning the Company's operations, financial condition and future business prospects; and to artificially inflate the price of WellCare common stock so they could: (i) dispose of over $57 million of their personally held stock; and (ii) protect and enhance their executive and directorial positions and the substantial compensation and prestige they obtained as a result thereof.

28.     The Individual Defendants accomplished their conspiracy, common enterprise and/or common course of conduct by causing the Company to purposefully, recklessly or negligently misrepresent its financial results. Because the actions described herein occurred under the authority of the Board, each of the Individual Defendants was a direct, necessary and substantial participant in the conspiracy, common enterprise and/or common course of conduct complained of herein.

29.     Each of the Individual Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein. In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each Individual Defendant acted with knowledge of the primary wrongdoing, substantially assisted the accomplishment of that wrongdoing, and was aware of his or her overall contribution to and furtherance of the wrongdoing.

**IMPROPER STATEMENTS**

30.     The Individual Defendants by their fiduciary duties of care, good faith and loyalty owed to WellCare a duty to insure that the Company's financial reporting fairly presented, in all material respects, the operations and financial condition of the Company. In order to adequately carry out these duties, it is necessary for the Individual Defendants to know and understand the material non-public information to be either disclosed or omitted from the Company's public

statements. In 2006 & 2007, defendants Herzlinger, Hourani and Michalik served as members of the Audit Committee. The current members of the Audit Committee are defendants Herzlinger, Hourani and Michalik. These defendants, as members of the Audit Committee, had a special duty to know and understand the material information set out in the Audit Committee's charter which provides that the Audit Committee is responsible for reviewing and discussing with management the Company's quarterly financial statements, as well as financial information and earnings guidance provided to analysts and rating agencies. Moreover, defendants Farha, Herzlinger, Hickey, Hourani, Shaw, Michalik and Moszkowski as directors of WellCare had ample opportunity to discuss this material information with management and fellow directors at any of the Board meetings that occurred during the Relevant Period as well as at meetings of committees of the Board. Despite these duties, the Individual Defendants negligently, recklessly, and/or intentionally caused or allowed, by their actions or inactions, the following improper statements to be disseminated by WellCare to the investing public and the Company's shareholders during the Relevant Period.

31.     On May 8, 2006, Defendants published a release announcing results for the first quarter of Fiscal Year 2006. The press release stated, in part, the following:

WellCare Doubles Membership Delivering 58% Earnings Growth

- Successfully launched national stand-alone Medicare Prescription Drug Plan (PDP), adding 700,000 new PDP beneficiaries
- First quarter revenues grew 74% to $730.4 million
- Membership doubled to over 1.5 million
- Medicare Advantage membership grew 38%
- First quarter net income grew 58%

WellCare Health Plans, Inc. (NYSE: WCG) today announced that net income for the first quarter of 2006 increased 58% to $16.8 million, or $0.42 per diluted share, based on 40.0 million weighted average shares outstanding, compared with net income of $10.6 million, or $0.27 per diluted share, based on 39.5 million weighted average shares outstanding for the same period last year. First quarter 2006 revenues increased 74% to $730.4 million compared with $418.9 million for the first quarter of 2005.

***

Results of Operations for the First Quarter

Total Revenues: Total revenues in the first quarter of 2006 increased 74% to $730.4 million compared with $418.9 million for the same period last year. First quarter 2006 revenue increases were principally attributable to the Company's strong growth in Medicaid and Medicare membership, including the addition of the Company's PDP products.

Medical Benefits Expense: Medical benefits expense for the first quarter of 2006 was $599.1 million, representing 83.0% of premium revenues, compared with $344.9 million representing 82.9% of premium revenues for the same period last year.

Selling, General and Administrative Expense: Selling, general and administrative (SG&A) expense was $97.3 million for the first quarter of 2006, representing 13.3% of total revenues, compared with $51.2 million, or 12.2% of total revenues, for the same period last year. The increase in SG&A expense was primarily due to increased spending necessary to support and sustain our membership growth.

Net Income: Net income for the first quarter of 2006 was $16.8 million, or $0.42 per diluted share, based on 40.0 million weighted average shares outstanding, compared with net income of $10.6 million, or $0.27 per diluted share, based on 39.5 million weighted average shares outstanding for the same period last year.

32.     Additionally, the Company's May 8, 2006 release quoted defendant Farha:

"We continue to achieve industry-leading growth through new product and geographic expansions," stated Todd S. Farha, President and Chief Executive Officer. "We are pleased to participate in the federal government's groundbreaking effort to extend prescription drug coverage to our nation's seniors, and we now rank among the top five PDPs nationally. Our focus on execution and operating discipline remains a competitive advantage, differentiating WellCare from other providers of government-sponsored managed care programs."

33.     The May 8, 2006 Company release also provided forward guidance:

The Company is raising its previously issued 2006 guidance of revenues of $3.1 billion and earnings per diluted share in the range of $2.37 to $2.42, based on 40.0 million weighted average shares outstanding. The Company is providing the following updated guidance for the full year 2006:

- Revenues of $3.4 billion; and
- Earnings per diluted share of $2.52 to $2.57, based on 40.4 million weighted average shares outstanding for the full year.

For the second quarter of 2006, the Company is providing the following guidance:

- Revenues of $770 million; and
- Earnings per diluted share of $0.48, based on 40.6 million weighted average shares outstanding.

34.     The Company, on May 9, 2006, filed with the SEC results for First Quarter 2006 pursuant to Form 10-Q.  The May 9, 2006 repeated many of the statements contained in the Company's May 8, 2006 release and also included the following:

> In the opinion of the Company's management, the interim financial statements reflect all normal recurring adjustments which the Company considers necessary for the fair presentation of the financial position and results of operations and cash flows for the interim periods presented. The interim financial statements included herein have been prepared in accordance with accounting principles generally accepted in the United States of America and with the instructions to Form 10-Q and Article 10 of Regulation S-X...

35.     The First Quarter 2006 Form 10-Q also attested to the Company's Controls and Procedures:

> Evaluation of Disclosure Controls and Procedures
>
> Our management carried out an evaluation required by Rule 13a-15 under the Securities Exchange Act of 1934, as amended (the "Exchange Act"), under the supervision and with the participation of our President and Chief Executive Officer ("CEO") and Chief Financial Officer ("CFO"), of the effectiveness of our disclosure controls and procedures as defined in Rule 13a-15 under the Exchange Act ("Disclosure Controls"). Based on the evaluation, our CEO and CFO concluded that as of March 31, 2006, our Disclosure Controls are effective in timely alerting them to material information required to be included in our reports filed with the SEC.
>
> Changes in Internal Controls
>
> There has not been any change in our internal controls over financial reporting (as defined in Rule 13a-15(f) of the Exchange Act) identified in connection with the evaluation required by Rule 13a-15(b) under the Exchange Act of the effectiveness of our disclosure controls and procedures (as defined in Rule 13a-15(c) under the Exchange Act) as of March 31, 2006 that has materially affected, or is reasonably likely to materially affect, those controls.

36.     Additionally, the First Quarter 2006 also contained certifications by defendant Farha stating that the "information contained in the Form 10-Q fairly presents, in all material respects, the financial condition and results of operations of the Company."

37.     On August 2, 2006, the Company published a release announcing results for the Second Quarter 2006, ended June 30, 2006.  The August 2, 2006 release stated in part:

> WELLCARE TOPS TWO MILLION MEMBERS DELIVERING 57% EARNINGS GROWTH

- Overall membership more than doubled to over 2,000,000
- Successfully launched new health plans in Georgia, with over 275,000 new members
- PDP membership grew to over 900,000 members
- Second quarter revenues grew 88% to $853 million
- Medicare Advantage membership grew nearly 41%
- Second quarter net income grew 57%

WellCare Health Plans, Inc. (NYSE: WCG) today announced that net income for the second quarter of 2006 increased 56.7% to $22.2 million, or $0.55 per diluted share, based on 40.6 million weighted average shares outstanding, compared with net income of $14.2 million, or $0.36 per diluted share, based on 38.9 million weighted average shares outstanding for the same period last year. Second quarter 2006 revenues increased 88.0% to $852.8 million compared with $453.7 million for the second quarter of 2005.

***

Results of Operations for the Second Quarter

Total Revenues: Total revenues in the second quarter of 2006 increased 88.0% to $852.8 million compared with $453.7 million for the same period last year. Second quarter 2006 revenue increases were principally attributable to the Company's strong growth in Medicaid and Medicare membership, including the addition of the Company's PDP products and its new Georgia Medicaid health plan.

Medical Benefits Expense: Medical benefits expense for the second quarter of 2006 was $705.0 million, representing 83.7% of premium revenues, compared with $365.8 million, representing 81.3% of premium revenues, for the same period last year. The medical benefits ratio increased primarily as a result of the seasonally higher medical benefits expense ratios associated with the Company's PDP business in its Medicare segment.

Selling, General and Administrative Expense: Selling, general and administrative (SG&A) expense for the second quarter of 2006 was $104.6 million, representing 12.3% of total revenues, compared with $59.1 million, or 13.0% of total revenues, for the same period last year.

Net Income: Net income for the second quarter of 2006 was $22.2 million, or $0.55 per diluted share, based on 40.6 million weighted average shares outstanding, compared with net income of $14.2 million, or $0.36 per diluted share, based on 38.9 million weighted average shares outstanding for the same period last year.

38.     In addition, the August 2, 2006 release quoted defendant Farha as stating that the Company was "pleased with our transformation into a leading national government healthcare company. Our operating discipline and focus on execution continue to drive our strong growth."

- 13 -

39.    In addition, the August 2, 2006 release provided forward guidance, as follows:

Guidance

The Company is raising its previously issued 2006 guidance of revenues of $3.4 billion and earnings per diluted share in the range of $2.52 to $2.57, based on 40.4 million weighted average shares outstanding. The Company is providing the following updated guidance for the full year 2006:

- Revenues of $3.55 billion; and
- Earnings per diluted share of $2.85 to $2.90, based on 40.4 million weighted average shares outstanding for the full year.

For the third quarter of 2006, the Company is providing the following guidance:

- Revenues of $975.0 million; and
- Earnings per diluted share of $0.95, based on 40.6 million weighted average shares outstanding.

40.    Soon thereafter, on August 4, 2006 the Company filed with the SEC the Company's results for Second Quarter 2006 pursuant to Form 10-Q. The Form 10-Q repeated many of the same statements that were contained in the Company's August 2, 2006, but also included the following:

The accompanying unaudited condensed consolidated interim financial statements should be read in conjunction with the consolidated financial statements and notes thereto for the fiscal year ended December 31, 2005 included in the Company's Annual Report on Form 10-K for the year ended December 31, 2005 ("2005 Form 10-K"), filed with the Securities and Exchange Commission (the "SEC") in February 2006, as amended. In the opinion of the Company's management, the interim financial statements reflect all normal recurring adjustments which the Company considers necessary for the fair presentation of the financial position and results of operations and cash flows for the interim periods presented. The interim financial statements included herein have been prepared in accordance with accounting principles generally accepted in the United States of America and with the instructions to Form 10-Q and Article 10 of Regulation S-X...

41.    Moreover, the Second Quarter 2006 Form 10-Q also contained statements that attested to the Company's Controls and Procedures, as follows:

Evaluation of Disclosure Controls and Procedures

Our management carried out an evaluation required by Rule 13a-15 under the Securities Exchange Act of 1934, as amended (the "Exchange Act"), under the supervision and with the participation of our President and Chief Executive Officer ("CEO") and Chief Financial Officer ("CFO"), of the effectiveness of our disclosure controls and procedures as defined in Rule 13a-15 under the Exchange Act

("Disclosure Controls"). Based on the evaluation, our CEO and CFO concluded that as of June 30, 2006, our Disclosure Controls are effective in timely alerting them to material information required to be included in our reports filed with the SEC.

Changes in Internal Controls

There has not been any change in our internal controls over financial reporting (as defined in Rule 13a-15(f) of the Exchange Act) identified in connection with the evaluation required by Rule 13a-15(b) under the Exchange Act of the effectiveness of our disclosure controls and procedures (as defined in Rule 13a-15(c) under the Exchange Act) as of June 30, 2006 that has materially affected, or is reasonably likely to materially affect, those controls.

42.    The Company's Second Quarter 2006 Form 10-Q also contained certifications by defendant Farha stating that "[t]he information contained in the Form 10-Q fairly presents, in all material respects, the financial condition and results of operations of the Company."

43.    The Company published, on November 1, 2006, a release announcing results for the third quarter ended September 30, 2006.  The November 1, 2006 release stated, in part, the following:

WELLCARE ANNOUNCES THIRD QUARTER RESULTS: $1 BILLION IN REVENUES; $1.06 DILUTED EARNINGS PER SHARE
- Membership grew to 2,165,000; 151% growth year over year
- Georgia membership grew to over 410,000 members
- PDP membership grew to over 911,000 members
- Third quarter revenues grew 104% to $1 billion
- Medicare Advantage membership grew 34% year over year
- Third quarter net income grew 166% year over year

WellCare Health Plans, Inc. (NYSE: WCG) today announced that net income for the third quarter of 2006 increased 166% to $43.3 million, or $1.06 per diluted share, based on 41.0 million weighted average shares outstanding, compared with net income of $16.3 million, or $0.41 per diluted share, based on 39.7 million weighted average shares outstanding for the same period last year. Third quarter 2006 revenues increased 104% to $1.0 billion compared with $495.5 million for the third quarter of 2005.

***

Results of Operations for the Third Quarter

Total Revenues: Total revenues in the third quarter of 2006 increased 104% to $1.0 billion compared with $495.5 million for the same period last year. Third quarter 2006 revenue increases were principally attributable to the Company's strong growth

in membership, primarily due to the addition of the Company's PDP products and its new Georgia Medicaid health plan.

Medical Benefits Expense: Medical benefits expense for the third quarter of 2006 was $802.9 million, representing 80.8% of premium revenues, compared with $396.1 million, representing 80.7% of premium revenues, for the same period last year.

Selling, General and Administrative Expense: Selling, general and administrative (SG&A) expense for the third quarter of 2006 was $124.9 million, representing 12.4% of total revenues, compared with $66.7 million, or 13.5% of total revenues, for the same period last year.

Net Income: Net income for the third quarter of 2006 was $43.3 million, or $1.06 per diluted share, based on 41.0 million weighted average shares outstanding, compared with net income of $16.3 million, or $0.41 per diluted share, based on 39.7 million weighted average shares outstanding, for the same period last year.

44.    The November 1, 2006 release also quoted defendant Farha, in part, as follows:

"We doubled the size of the Company over the past year and retained our focus on execution and operational discipline," stated Todd S. Farha, Chairman and Chief Executive Officer. "We continue our focus on the needs of seniors, families and underserved populations to deliver higher quality healthcare at lower cost to our government partners. In 2007, we will continue our growth by launching Medicare private fee-for-service plan offerings and our Medicaid expansion in the northeast region of Ohio."

45.    The November 1, 2006 also provided the following guidance:

The Company is raising its previously issued 2006 guidance of revenues of $3.55 billion and earnings per diluted share in the range of $2.85 to $2.90, based on 40.4 million weighted average shares outstanding. The Company is providing the following updated guidance for the full year 2006:

- Revenues of $3.7 billion; and
- Earnings per diluted share of $3.33 to $3.38, based on 40.7 million weighted average shares outstanding for the full year.

For the fourth quarter of 2006, the Company is providing the following guidance:

- Revenues of $1.1 billion; and
- Earnings per diluted share of $1.30 to $1.35, based on 41.2 million weighted average shares outstanding.

The Company is also establishing initial guidance for the full year 2007:

- Revenues of $4.8 billion; and

- Earnings per diluted share of $3.95 to $4.05, based on 42.1 million weighted average shares outstanding for the full year.

46.     The Company, on February 13, 2007, published a release announcing results for the fourth quarter and year end 2007, the period ended December 31, 2006.  The February 13, 2007 release stated, in part, the following:

### WELLCARE ANNOUNCES FOURTH QUARTER AND FULL-YEAR 2006 RESULTS

### $1.2 BILLION IN QUARTERLY REVENUES; $1.38 DILUTED EARNINGS PER SHARE

- Fourth quarter revenues grew 129% to $1.2 billion year over year
- Fourth quarter net income grew 425.5% year over year
- Membership grew to 2,258,000; 164% growth year over year
- PDP membership grew to 923,000 members
- Georgia membership grew to 477,000 members
- Medicare Advantage membership grew over 30% year over year

WellCare Health Plans, Inc. (NYSE: WCG) today announced that net income for the fourth quarter of 2006 increased 425.5% to $57.0 million, or $1.38 per diluted share, based on 41.2 million weighted average shares outstanding, compared with net income of $10.8 million, or $0.27 per diluted share, based on 39.7 million weighted average shares outstanding for the same period last year. Fourth quarter 2006 revenues increased 129.0% to $1.2 billion compared with $511.5 million for the fourth quarter of 2005.

*** 

Results of Operations for the Fourth Quarter

Total Revenues: Total revenues in the fourth quarter of 2006 increased 129.0% to $1.2 billion compared with $511.5 million for the same period last year. Fourth quarter 2006 revenue increases were principally attributable to the Company's strong growth in membership, primarily due to the addition of the Company's PDP products and the launch of its Georgia Medicaid health plan.

Medical Benefits Expense: Medical benefits expense for the fourth quarter of 2006 was $905.2 million, representing 78.4% of premium revenues, compared with $405.3 million, representing 80.2% of premium revenues, for the same period last year.

Selling, General and Administrative Expense: Selling, general and administrative (SG&A) expense for the fourth quarter of 2006 was $166.0 million, representing 14.2% of total revenues, compared with $82.5 million, or 16.1% of total revenues,

for the same period last year, which included costs to prepare for the launch of PDP and Georgia.

Net Income: Net income for the fourth quarter of 2006 was $57.0 million, or $1.38 per diluted share, based on 41.2 million weighted average shares outstanding, compared with net income of $10.8 million, or $0.27 per diluted share, based on 39.7 million weighted average shares outstanding, for the same period last year.

Results of Operations for the Year

Total Revenues: Total revenues for the year ended December 31, 2006 increased $1.9 billion, or 100.2%, to $3.8 billion, compared with $1.9 billion for the same period last year. 2006 revenue increases were principally attributable to the Company's membership growth, including the launch of PDP and Georgia, and mix of members between product lines.

Medical Benefits Expense: Medical benefits expense for the year ended December 31, 2006 was $3.0 billion, representing 81.1% of premium revenues, compared with $1.5 billion, representing 81.2% of premium revenues for the same period last year.

Selling, General and Administrative Expense: SG&A expense was $492.8 million for the year ended December 31, 2006, representing 13.1% of total revenues, compared with $259.5 million, or 13.8% of total revenues, for the same period last year.

Net Income: Net income for the year ended December 31, 2006 was $139.2 million, or $3.43 per diluted share, based on 40.6 million weighted average shares outstanding, compared with net income of $51.9 million, or $1.32 per diluted share, based on 39.3 million weighted average shares outstanding, for the same period last year.

47.     In addition, the February 13, 2007 release also quoted defendant Farha, in part, as

follows:

"2006 was a transformative year for WellCare," said Todd S. Farha, Chairman and Chief Executive Officer. "We added over 1.4 million members and doubled our revenue without losing focus on delivering high service levels to our providers and members. We look forward to building on our strong 2006 results in 2007 and in future years."

48.     The February 13, 2007 release provided forward guidance:

The Company is increasing its previously issued full-year 2007 guidance with new expectations of revenues of $4.95 billion and earnings per diluted share of $4.10 to $4.20, based on 41.8 million weighted average shares outstanding. In addition, the Company is raising its previously issued first quarter guidance to:

- Revenues of $1.2 billion; and

- Earnings per diluted share of $0.53, based on 41.4 million weighted average shares outstanding.

49.    On February 16, 2007, the Company filed with the SEC the Company's 2006 year end financial results pursuant to Form 10-K. The February 16, 2007 Form 10-K repeated statements from the February 13, 2007 release included the following certifications from defendant Farha:

CERTIFICATION

I, Todd S. Farha, certify that:

1.    I have reviewed this Annual Report on Form 10-K of WellCare Health Plans, Inc.;

2.    Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3.    Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4.    The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

a)    Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

b)    Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

c)    Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

d)      Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5.      The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

a)      All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

b)      Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

50.      Additionally, the Company's February 16, 2007 10-Q contained Farha's certification that "[t]he information contained in the Form 10-K fairly presents, in all material respects, the financial condition and results of operations of the Company."

51.      On April 27, 2007, the Company filed a Proxy Statement with the SEC. The April 27, 2007 Proxy described the Company's "Trust Program" for corporate ethics and compliance:

Due to the increasingly complex ethical and legal questions facing all participants in the healthcare industry, we have unified our corporate ethics and compliance policies by implementing a comprehensive corporate ethics and compliance program, called the Trust Program. The Trust Program covers all aspects of our company and is designed to assist us with conducting our business in accordance with applicable federal and state laws and high standards of business ethics. The Trust Program applies to members of our board, our associates, including our chief executive officer, chief financial officer and our principal accounting officer or controller and, in some cases, our business partners and independent contractors. The Trust Program contains the following elements:

- Written standards of conduct;
- Designation of a corporate compliance officer and compliance committee;
- Effective training and education;
- Effective lines for reporting and communication;
- Enforcement of standards through disciplinary guidelines and actions;
- Internal monitoring and auditing; and
- Prompt response to detected offenses and development of corrective action plans.

- 20 -

We maintain and update training and monitoring programs to educate our directors, associates, business partners and independent contractors on the legal and regulatory requirements of their respective duties and positions and to detect possible violations. To help ensure compliance with the Trust Program, we also conduct regular, periodic compliance audits by internal and external auditors and compliance staff who have expertise in federal and state healthcare laws and regulations.

52.     On May 7, 2007, the Company published a release announcing results for First Quarter 2007, ended March 31, 2007. The May 7, 2007 release stated, in part, the following:

WELLCARE REPORTS FIRST QUARTER 2007 RESULTS
Total Revenues Grew To $1.24 Billion, Up 70% Over 2006

- Membership grew to 2.27 million, up 47% year over year.
- Medicare Advantage membership increased 46% year to date and 77% year over year.
- Net income increased 49% year over year to $25.0 million.

WellCare Health Plans, Inc. (NYSE: WCG) today announced first quarter 2007 net income of $25.0 million, up 49% over the first quarter 2006. Diluted earnings per share (EPS) of $0.60 increased from $0.42 in the same period last year. Membership grew 47% to 2.27 million as of March 31, 2007, yielding revenue growth of 70% to $1.24 billion.

***

Highlights of First Quarter Operations

Total Revenues: Total revenues for the quarter rose 70% year over year to $1.24 billion. The growth was attributable principally to the increase in the Company's membership, including the launch of the Georgia Medicaid health plan, which began operations in June 2006, as well as growth in the Medicare prescription drug plan (PDP) product. In addition, Medicare Advantage membership growth was 77% year over year and 46% year to date.

Medical Benefits Expense: Medical benefits expense was $1.02 billion, compared with $599 million for the same period last year. The medical benefits ratio was 83.8%, compared with 84.5% in 2006, excluding the 1.5% impact of the net reinsurance recovery for the Company's Medicare PDP product. Including the reinsurance recovery, the first quarter 2006 medical benefits ratio was 83.0%. As previously disclosed, WellCare did not renew its PDP reinsurance in 2007. The decrease in the ratio was due primarily to better than expected retention of PDP members, which resulted in improved formulary compliance and increased generic fill rates. The positive performance of the PDP product is a significant contributor to the Company's improved outlook for 2007. Please refer to the supplemental information for a reconciliation of the medical benefits ratio excluding the impact of the 2006 net reinsurance recovery.

Selling, General, and Administrative (SG&A) Expense: SG&A expense was $166.6 million, representing 13.4% of total revenues, compared with $97.3 million, or 13.3% of total revenues, for the same period last year. The increase in SG&A expense is in line with the expansion of WellCare's membership and operations.

First Quarter Cash Flow and Financial Condition Highlights

Net cash provided by operations was $102.3 million, or 4.1 times net income, after adjusting for the timing of receipt of payments from the Company's government partners. Please refer to the supplemental information for a reconciliation of adjusted net cash provided by operations to net cash provided by operations of $217.0 million on a GAAP basis.

Days in claims payable was 49 as of March 31, 2007, compared with 47 as of December 31, 2006. The increase results principally from the launch of the Company's Medicare private fee-for-service products.

As of March 31, 2007, the Company had cash and cash equivalents of $1.35 billion as well as investments classified as current assets of $151 million, for a total of $1.50 billion in cash and short-term investments.

53.     The May 7, 2007 release also provided the following guidance:

Financial Guidance

WellCare is increasing its full-year 2007 guidance as follows:

- Diluted EPS of $4.65 to $4.75, based on 41.8 million weighted average shares outstanding; and
- Total revenues of $5.2 billion.

The Company's previous guidance was diluted EPS of $4.10 to $4.20 based on 41.8 million weighted average shares outstanding and revenue of $4.95 billion.

For the second quarter, the Company is providing the following guidance:

- Diluted EPS of $1.20 to $1.25; and
- Total revenues of $1.3 billion.

54.     The Company, on May 9, 2007, filed with the SEC the Company's First Quarter 2007 quarterly report pursuant to Form 10-Q. The 10-Q repeated many of the statements found in the May 7, 2007 release, but also included the following:

The accompanying unaudited condensed consolidated interim financial statements should be read in conjunction with the consolidated financial statements and notes thereto for the fiscal year ended December 31, 2006 included in the Company's

Annual Report on Form 10-K for the year ended December 31, 2006 ("2006 Form 10-K"), filed with the Securities and Exchange Commission (the "SEC") in February 2007. In the opinion of the Company's management, the interim financial statements reflect all normal recurring adjustments which the Company considers necessary for the fair presentation of the financial position and results of operations and cash flows for the interim periods presented. The interim financial statements included herein have been prepared in accordance with accounting principles generally accepted in the United States of America ("GAAP") and with the instructions to Form 10-Q and Article 10 of Regulation S-X…

55.     The First Quarter 2007 10-Q also contained a certification by defendant Farha the Company's CFO that stated, in part, that "[t]he information contained in the Form 10-Q fairly represents, in all material respects, the financial condition and results of operations of the Company."

56.     On August 2, 2007, the Company published a release announcing results for the Second Quarter 2007, ended June 30, 2007.  The August 2, 2007 release stated, in part, the following:

WELLCARE REPORTS SECOND QUARTER 2007 RESULTS

Quarterly Revenues of $1.34 Billion Up 57% Over 2006

- Diluted earnings per share of $1.30 increased 136% from 2006.
- Medicare Advantage membership increased 72% year to date and 87% year over year.

WellCare Health Plans, Inc. (NYSE: WCG) today announced second quarter 2007 net income of $54.6 million, up 146% over the second quarter 2006.  Diluted earnings per share (EPS) was $1.30 versus $0.55 in the same period last year, a 136% increase.  Membership grew over 14% to 2.3 million as of June 30, 2007, yielding total revenues of $1.34 billion, up 57% over the prior year.

57.     The Company's August 2, 2007 release also quoted defendant Farha as stating the following:

"[The Company's] operating results demonstrate our commitment to providing quality service to our members, providers and government partners," said Todd S. Farha, chairman and chief executive officer.  "We will continue our focus on delivering high quality healthcare tailored to the communities we serve."

58.     The Company's August 2, 2007 release also provided the following guidance:

Financial Guidance
WellCare is updating its full-year 2007 guidance as follows:

- Diluted EPS of $5.00 to $5.05, based on 42.1 million weighted average shares outstanding; and
- Total revenues of $5.2 to $5.3 billion.

For the third quarter, the Company is providing the following guidance:

- Diluted EPS of $1.48 to $1.51; and
- Total revenues of $1.35 billion.

59.     On August 3, 2007 the Company filed the Company Second Quarter 2007 quarterly report pursuant to Form 10-Q.  The August 3, 2007 Form 10-Q repeated many of the statements contained in the August 2, 2007 release, but also included certifications from defendant Farha and the Company's CFO stating that the "information contained in the Form 10-Q fairly presents, in all material respects, the financial condition and results of operations of the Company."

### THE TRUTH BEGINS TO EMERGE

60.     On October 24, 2007 the public was shocked to learn that more than 200 federal and state law-enforcement agents raided WellCare's Tampa, Florida headquarters.   The agents participating in the raid were from the Federal Bureau of Investigation, the Health and Human Services Department and the Florida attorney general's Medicaid fraud unit.

61.     An article published October 25, 2007 in the *Wall Street Journal* entitled "WellCare Is Searched In State, Federal Probe" stated the following:

> State and federal law-enforcement agents armed with a federal search warrant raided the headquarters of WellCare Health Plans Inc. in Tampa, Fla., according to the U.S. attorney's office there.
>
> ***
>
> Much of WellCare's revenue comes from Medicare, the federal health program for the elderly and disabled, and Medicaid, a state-federal health program for the poor. By offering managed-care alternatives to traditional Medicare and Medicaid benefits, the company acts as a middleman between government payers and health-care providers; about a third of Medicaid beneficiaries receive care through private insurers.
>
> ***
>
> The industry has faced scrutiny in part because of its outsized growth. WellCare has drawn attention in Florida, among its biggest markets, due to its reinsurance dealings

with offshore subsidiaries. It manages care for 356,062 Florida Medicaid beneficiaries, or more than a third of the program's managed-care enrollment.

62.     After news of the law enforcement raid on WellCare became public, the New York Stock exchange halted trading of shares in WellCare, but the Company's share price fell $7.10 per share, or 5.8%, to $115.17. When trading resumed on October 25, 2007, Company shares opened at approximately $52 per share, down $63.40 per share after an overnight drop of more than 55%. On October 29, 2007 the Company's stock ended the day trading at $28.62.

63.     The October 24, 2007 law-enforcement raid on WellCare caused Moody's Investors Service to place the ratings of WellCare on review for possible downgrade. In a note reported by the *Associated Press*, Moody's stated that

> The uncertainty associated with [the investigation of WellCare] could deter seniors from enrolling in WellCare's Medicare Advantage and Part D plans during the critical open enrollment period which begins next month . . . The Medicaid business is very reliant on reputation and an operating problem or investigation in one state could jeopardize the Medicaid contracts in other states or prohibit expansion into new states.

## REASONS THE STATEMENTS WERE IMPROPER

64.     The Company's statements identified above in ¶¶33-61 were improper. The true facts, which were known or should have been known by each of the Individual Defendants but concealed from the investing public and the Company's shareholders during the Relevant Period, were as follows:

(a)     the Company was materially overstating its financial results by failing to properly account for its operations including operations related to government-sponsored health care programs;

(b)     the Company lacked adequate internal controls and was therefore unable to ascertain its true financial condition; and

(c)     as a result of the foregoing, the values of the Company's net income and funds from operations were materially overstated at all relevant times.

## ILLEGAL INSIDER SELLING

65.    During the Relevant Period, the Insider Selling Defendants sold the following shares of WellCare stock:

| Date | Defendant | Shares | Sale Price | Value |
|---|---|---|---|---|
| 12-Jul-06 | FARHA | 13,062 | $52.23 - $52.79 | $686,000 |
| 12-Jul-06 | FARHA | 3,736 | $52 - $52.21 | $195,000 |
| 11-Aug-06 | FARHA | 16,798 | $51.50 - $51.81 | $868,000 |
| 13-Sep-06 | FARHA | 16,798 | $59 - $59.25 | $993,000 |
| 24-Oct-06 | FARHA | 1,072 | $58.78 - $58.82 | $63,000 |
| 24-Oct-06 | FARHA | 15,726 | $58.83 - $59.34 | $929,000 |
| 16-Nov-06 | FARHA | 16,798 | $63.25 - $64.65 | $1,074,000 |
| 28-Nov-06 | FARHA | 968 | $63.06 - $63.28 | $61,000 |
| 28-Nov-06 | FARHA | 10,641 | $63.29 - $63.58 | $675,000 |
| 28-Nov-06 | FARHA | 5,189 | $63.60 - $64.22 | $332,000 |
| 6-Dec-06 | FARHA | 16,798 | $66.90 - $67.85 | $1,132,000 |
| 21-Dec-06 | FARHA | 16,798 | $70 - $71.48 | $1,188,000 |
| 9-Jan-07 | FARHA | 4,070 | $70.25 - $70.35 | $286,000 |
| 9-Jan-07 | FARHA | 12,728 | $70.41 - $70.85 | $899,000 |
| 25-Jan-07 | FARHA | 7,734 | $75.01 - $75.25 | $581,000 |
| 25-Jan-07 | FARHA | 248 | $75.24 | $18,659 |
| 25-Jan-07 | FARHA | 8,816 | $75.26 - $76 | $667,000 |
| 7-Feb-07 | FARHA | 16,798 | $77.50 - $78.46 | $1,310,000 |
| 21-Feb-07 | FARHA | 16,798 | $81 - $81.34 | $1,363,000 |
| 6-Mar-07 | FARHA | 1,988 | $83.71 - $83.76 | $166,000 |
| 6-Mar-07 | FARHA | 14,810 | $83.77 - $84.1 | $1,243,000 |
| 20-Mar-07 | FARHA | 16,798 | $89.20 - $89.78 | $1,503,000 |
| 5-Apr-07 | FARHA | 16,798 | $90 - $90.36 | $1,515,000 |
| 19-Apr-07 | FARHA | 310 | $90.33 - $90.37 | $28,000 |
| 19-Apr-07 | FARHA | 16,488 | $90.40 - $91.03 | $1,496,000 |
| 10-May-07 | FARHA | 16,798 | $89.50 - $90.51 | $1,512,000 |
| 24-May-07 | FARHA | 16,798 | $91 - $92 | $1,537,000 |
| 12-Jun-07 | FARHA | 2,294 | $90.19 - $90.35 | $207,000 |
| 12-Jun-07 | FARHA | 14,504 | $90.36 - $90.7 | $1,313,000 |
| 25-Jun-07 | FARHA | 16,798 | $91 - $91.75 | $1,535,000 |
| 12-Jul-07 | FARHA | 16,798 | $93.20 - $94.25 | $1,574,000 |
| 19-Jul-07 | FARHA | 16,798 | $102.10 - $104.2 | $1,733,000 |
| 15-Aug-07 | FARHA | 16,798 | $93.30 - $97.5 | $1,603,000 |
| 24-Aug-07 | FARHA | 16,798 | $99.65 - $100.08 | $1,678,000 |
| 11-Sep-07 | FARHA | 112 | $100.84 | $11,294 |
| 11-Sep-07 | FARHA | 6,769 | $100.87 - $101.38 | $685,000 |
| 11-Sep-07 | FARHA | 9,917 | $101.39 - $101.88 | $1,008,000 |
| 20-Sep-07 | FARHA | 786 | $104.65 - $104.69 | $82,000 |
| 20-Sep-07 | FARHA | 6,668 | $104.71 - | $699,000 |

|       | Date | Name | Shares | Price | Value |
|-------|------|------|--------|-------|-------|
|       |      |      |        | $105.07 |       |
|       | 20-Sep-07 | FARHA | 9,344 | $105.08 - $105.44 | $984,000 |
|       | 10-Oct-07 | FARHA | 5,024 | $112.31 - $112.65 | $565,000 |
|       | 10-Oct-07 | FARHA | 11,784 | $112.66 - $113 | $1,330,000 |
| Total |      |      | 453,556 |      | $37,327,953 |
|       | 28-Aug-07 | HERZLINGER | 10,000 | $95.50 - $95.55 | $955,000 |
|       | 30-Aug-07 | HERZLINGER | 100 | $96.80 | $9,680 |
|       | 31-Aug-07 | HERZLINGER | 13,900 | $96.90 - $98.63 | $1,359,000 |
| Total |      |      | 24,000 |      | $2,323,680 |
|       | 12-Mar-07 | HICKEY | 6,584 | $86.06 - $86.24 | $567,000 |
|       | 14-Aug-07 | HICKEY | 4,000 | $98.17 - $98.53 | $393,000 |
| Total |      |      | 10,584 |      | $960,000 |
|       | 30-Nov-06 | HOURANI | 5,000 | $64.74 - $64.91 | $324,000 |
|       | 12-Dec-06 | HOURANI | 5,000 | $68.17 - $69.19 | $343,000 |
|       | 12-Jan-07 | HOURANI | 600 | $74.39 - $74.7 | $45,000 |
|       | 12-Jan-07 | HOURANI | 4,400 | $73.70 - $74.32 | $326,000 |
|       | 12-Feb-07 | HOURANI | 1,300 | $76.94 - $77.34 | $100,000 |
|       | 12-Feb-07 | HOURANI | 3,700 | $75.92 - $76.9 | $283,000 |
|       | 12-Mar-07 | HOURANI | 800 | $85.26 - $85.59 | $68,000 |
|       | 12-Mar-07 | HOURANI | 4,200 | $84.18 - $85.2 | $356,000 |
|       | 8-Aug-07 | HOURANI | 3,000 | $98.34 | $295,020 |
|       | 7-Sep-07 | HOURANI | 3,000 | $98.66 - $99.61 | $297,000 |
|       | 8-Oct-07 | HOURANI | 3,000 | $108.89 - $109.75 | $328,000 |
| Total |      |      | 55,168 |      | $4,685,020 |
|       | 24-Aug-06 | SHAW | 13,131 | $55 - $55.08 | $723,000 |
|       | 16-Feb-07 | SHAW | 7,625 | $78.56 - $78.86 | $600,000 |
|       | 3-Aug-07 | SHAW | 5,000 | $105 - $105.33 | $526,000 |
| Total |      |      | 25,756 |      | $1,849,000 |
|       | 27-Feb-07 | MICHALIK | 4,000 | $81.13 - $81.32 | $325,000 |
|       | 8-Mar-07 | MICHALIK | 7,000 | $85.13 - $85.42 | $597,000 |
|       | 19-Mar-07 | MICHALIK | 2,000 | $89.05 - $89.13 | $178,000 |
|       | 16-Apr-07 | MICHALIK | 2,000 | $89.93 - $89.95 | $180,000 |
|       | 23-May-07 | MICHALIK | 2,000 | $90.12 - $90.2 | $180,000 |
|       | 28-Jun-07 | MICHALIK | 2,000 | $91.68 - $91.73 | $183,000 |
|       | 16-Jul-07 | MICHALIK | 2,000 | $96.22 - $96.3 | $193,000 |
|       | 31-Aug-07 | MICHALIK | 2,000 | $98.65 - $98.69 | $197,000 |
|       | 25-Sep-07 | MICHALIK | 2,000 | $109.36 - $109.48 | $219,000 |
| Total |      |      | 25,000 |      | $2,252,000 |
|       | 16-Feb-07 | MOSZKOWSKI | 3,800 | $78.77 - $79.99 | $302,000 |
|       | 16-Feb-07 | MOSZKOWSKI | 6,200 | $77.92 - $78.76 | $486,000 |
|       | 16-Mar-07 | MOSZKOWSKI | 2,000 | $85.04 - $85.41 | $170,000 |

| | | | | |
|---|---|---|---|---|
| 16-Mar-07 | MOSZKOWSKI | 8,000 | $85.02 - $85.76 | $683,000 |
| 16-Apr-07 | MOSZKOWSKI | 10,000 | $88.95 - $89.52 | $892,000 |
| 16-May-07 | MOSZKOWSKI | 6,000 | $90.14 - $90.83 | $543,000 |
| 16-May-07 | MOSZKOWSKI | 4,000 | $89.39 - $90.13 | $359,000 |
| 18-Jun-07 | MOSZKOWSKI | 10,000 | $88.62 - $90.18 | $894,000 |
| 16-Jul-07 | MOSZKOWSKI | 3,400 | $96.22 - $96.36 | $327,000 |
| 16-Jul-07 | MOSZKOWSKI | 6,600 | $95.70 - $96.43 | $634,000 |
| 16-Aug-07 | MOSZKOWSKI | 4,092 | $91.33 - $91.89 | $375,000 |
| 16-Aug-07 | MOSZKOWSKI | 5,908 | $91.91 - $92.91 | $546,000 |
| 17-Sep-07 | MOSZKOWSKI | 500 | $100.33 - $100.38 | $50,000 |
| 17-Sep-07 | MOSZKOWSKI | 9,500 | $99.75 - $100.32 | $950,000 |
| 16-Oct-07 | MOSZKOWSKI | 10,000 | $112.44 - $113.27 | $1,129,000 |
| **Total** | | **90,000** | | **$8,340,000** |

66.    Collectively, the Insider Trading Defendants sold 684,064 shares for $57,737,653 during the Relevant Period.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

67.    Plaintiff brings this action derivatively in the right and for the benefit of WellCare to redress injuries suffered, and to be suffered, by WellCare as a direct result of the breaches of fiduciary duty, abuse of control, gross mismanagement, waste of corporate assets and unjust enrichment, as well as the aiding and abetting thereof, by the Individual Defendants. WellCare is named as a nominal defendant solely in a derivative capacity. This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

68.    Plaintiff will adequately and fairly represent the interests of WellCare in enforcing and prosecuting its rights.

69.    Plaintiff is and was an owner of the stock of WellCare during all times relevant to the Individual Defendants' wrongful course of conduct alleged herein, and remains a shareholder of the Company.

70.    The current Board has eight members and includes the following seven individuals: defendants Farha, Herzlinger, Hickey, Hourani, Shaw, Michalik, and Moszkowski. Plaintiff has not made any demand on the present Board of WellCare to institute this action because such a demand would be a futile, wasteful and useless act, particularly for the following reasons:

(a)    As a result of their access to and review of internal corporate documents; conversations and connections with other corporate officers, employees and directors; and attendance at management and Board meetings, each of the defendants knew of adverse, non-public information.  While in possession of this material adverse, non-public information regarding the Company, the Insider Selling Defendants sold WellCare shares:

(i)    During the Relevant Period, defendant Farha sold 453,556 shares of WellCare stock for proceeds of $37,327,953;

(ii)    During the Relevant Period, defendant Herzlinger sold 24,000 shares of WellCare stock for proceeds of $2,323,680;

(iii)    During the Relevant Period, defendant Hickey sold 10,584 shares of WellCare stock for proceeds of $960,000;

(iv)    During the Relevant Period, defendant Hourani sold 55,168 shares of WellCare stock for proceeds of $4,685,020;

(v)    During the Relevant Period, defendant Shaw sold 25,756 shares of WellCare stock for proceeds of $1,849,000;

(vi)    During the Relevant Period, defendant Michalik sold 25,000 shares of WellCare stock for proceeds of $2,252,000;

(vii)    During the Relevant Period, defendant Moszkowski sold 90,000 shares of WellCare stock for proceeds of $8,340,000.  Because the Insider Selling Defendants received a personal financial benefit from the challenged insider trading transactions, these defendants are interested.  Also, these defendants face a substantial threat of liability for breach of their fiduciary duties for insider selling.  Since these directors have breached their fiduciary duties and are interested, any demand upon them is futile;

(b)    According to WellCare's proxy statement filed with the SEC on or about April 4, 2007, defendants Herzlinger, Hourani and Michalik were, during the Relevant Period, members of the Audit Committee. The Audit Committee's responsibilities are, by its charter, to:

> (A) assist the board of directors in the oversight of (i) the integrity of the financial statements of the Corporation, (ii) the compliance by the Corporation with legal and regulatory requirements, (iii) the qualification and independence of the Corporation's

independent auditors, and (iv) the performance of the Corporation's internal audit function and independent auditors, and (B) prepare an audit committee report as required by the Securities and Exchange Commission to be included in the Corporation's annual proxy statement.

The Audit Committee was responsible for overseeing and directly participating in WellCare's financial reporting process. Accordingly, defendants Herzlinger, Hourani and Michalik breached their fiduciary duties of due care, loyalty and good faith because the Audit Committee participated in the preparation of improper financial statements and earnings press releases that contained false and/or misleading material information. For Fiscal Year 2006, defendants Herzlinger, Hourani and Michalik served as members of the Audit Committee which met four times. As a result of these defendants' liability for their breach of fiduciary duties, any demand upon them is futile;

(c)     The principal professional occupation of defendant Farha is his employment with WellCare, pursuant to which he received and continues to receive substantial monetary compensations and other benefits. For Fiscal Year 2006, WellCare paid defendant Farha $5,270,825 in salary and other compensation and granted Farha 100,000 options. Accordingly, defendant Farha lacks independence from defendants Hickey, Hourani and Moszkowski defendants who are not disinterested and/or independent and who exert influence over defendant Farha's compensation by virtue of their positions as members of the Compensation Committee. The Compensation Committee annually reviews and approves corporate goals and objectives relevant to Farha's compensation, evaluates Farha's performance in light of those goals and objectives, and approves Farha's compensation level based upon this evaluation. This lack of independence renders defendant Farha incapable of impartially considering a demand to commence and vigorously prosecute this action;

(d)     WellCare's non-employee directors receive substantial compensation in the form of annual retainers, consulting fees, stock option grants and Board and committee fees. Specifically, during Fiscal Year 2006 WellCare paid defendant Herzlinger $175,557, defendant Hickey $115,499, defendant Hourani $140,127, defendant Shaw $140,127 and paid defendant Michalik $135,205. Accordingly, defendants Herzlinger, Hickey, Hourani, Shaw and Michalik are

interested in maintaining their positions on the Board so as to safeguard their substantial compensation and unvested stock options. Thus, demand upon these defendants is futile;

(e)     The entire WellCare Board and senior management participated in the wrongs complained of herein.   WellCare's directors are not disinterested or independent due to the following: defendants Farha, Herzlinger, Hickey, Hourani, Shaw, Michalik, and Moszkowski served on the WellCare Board during the Relevant Period.  Pursuant to their specific duties as Board members, each was charged with the management of the Company and to conduct its business affairs.  Each of the above referenced defendants breached the fiduciary duties that they owed to WellCare and its shareholders in that they failed to prevent and correct the improper financials. Thus, the WellCare Board cannot exercise independent objective judgment in deciding whether to bring this action or whether to vigorously prosecute this action because its members are interested personally in the outcome as it is their actions that have subjected WellCare to millions of dollars in liability for possible violations of applicable securities laws;

(f)     Defendant Farha certified certain of WellCare's SEC filings for Fiscal Years 2006 and 2007.  Accordingly, demand is futile as to Farha as he faces a substantial likelihood of liability for breach of fiduciary duties owed to WellCare;

(g)     Each of the key officers and directors knew of and/or directly benefited from the wrongdoing complained of herein;

(h)     The Director Defendants of WellCare  approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts to conceal or disguise those wrongs from WellCare's stockholders or recklessly and/or negligently disregarded the wrongs complained of herein, and are therefore not disinterested parties;

(i)     In order to bring this suit, all of the directors of WellCare would be forced to sue themselves and persons with whom they have extensive business and personal entanglements, which they will not do, thereby excusing demand;

(i)     defendants Hourani and Farha are family members;

(ii)      defendant Hickey is president of D2Hawkeye, Inc. which entered into a services contract pursuant to which D2Hawkeye, Inc. will develop an internet-based portal for certain of the Company's health care providers;

(iii)     defendant Shaw has provided consulting services for the Company for which he was paid compensation greater than $100,000;

(iv)      defendants Farha and Hickey served together in senior positions at Oxford Health Plans, Inc.;

(v)       defendants Michalik and Moszkowski served together in senior positions at Soros Private Equity Partners LLC, the private equity investment business of Soros Fund Management LLC; and

(vi)      defendants Farha and Hourani served together in senior positions at Physician Corporation of America, a Florida-based health plan focused on Medicaid recipients.

(j)       The acts complained of constitute violations of the fiduciary duties owed by WellCare's officers and directors and these acts are incapable of ratification;

(k)      Each of the Director Defendants of WellCare authorized and/or permitted the false statements disseminated directly to the public or made directly to securities analysts and which were made available and distributed to shareholders, authorized and/or permitted the issuance of various of the false and misleading statements and are principal beneficiaries of the wrongdoing alleged herein, and thus could not fairly and fully prosecute such a suit even if such suit was instituted by them;

(l)       Any suit by the current directors of WellCare to remedy these wrongs would likely expose the Individual Defendants and WellCare to further violations of the securities laws that would result in civil actions being filed against one or more of the Individual Defendants, thus, they are hopelessly conflicted in making any supposedly independent determination whether to sue themselves;

(m)     WellCare has been and will continue to be exposed to significant losses due to the wrongdoing complained of herein, yet the Individual Defendants and current Board have not

filed any lawsuits against themselves or others who were responsible for that wrongful conduct to attempt to recover for WellCare any part of the damages WellCare suffered and will suffer thereby;

(n)     If the current directors were to bring this derivative action against themselves, they would thereby expose their own misconduct, which underlies allegations against them contained in class action complaints for violations of securities law, which admissions would impair their defense of the class actions and greatly increase the probability of their personal liability in the class actions, in an amount likely to be in excess of any insurance coverage available to the Individual Defendants.  In essence, they would be forced to take positions contrary to the defenses they will likely assert in the securities class actions.  This they will not do.  Thus, demand is futile; and

71.     Moreover, despite the Individual Defendants having knowledge of the claims and causes of action raised by Plaintiff, the current Board has failed and refused to seek to recover for WellCare for any of the wrongdoing alleged by Plaintiff herein.

72.     Plaintiff has not made any demand on shareholders of WellCare to institute this action since such demand would be a futile and useless act for the following reasons:

(a)     WellCare is a publicly held company with over 41.7 million shares outstanding, and thousands of shareholders;

(b)     Making demand on such a number of shareholders would be impossible for Plaintiff who has no way of finding out the names, addresses or phone numbers of shareholders; and

(c)     Making demand on all shareholders would force Plaintiff to incur huge expenses, assuming all shareholders could be individually identified.

## COUNT I

### Against the Insider Selling Defendants for Breach of Fiduciary Duties for Insider Selling and Misappropriation of Information

73.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

74.     At the time of the stock sales set forth herein, the Insider Selling Defendants knew the information described above, and sold WellCare common stock on the basis of such information.

- 33 -

75.     The information described above was proprietary non-public information concerning the Company's financial condition and future business prospects.  It was a proprietary asset belonging to the Company, which the Insider Selling Defendants used for their own benefit when they sold WellCare common stock.

76.     At the time of their stock sales, the Insider Selling Defendants knew that the Company's statements were materially misstated.  The Insider Selling Defendants' sales of WellCare common stock while in possession and control of this material adverse, non-public information was a breach of their fiduciary duties of loyalty and good faith.

77.     Since the use of the Company's proprietary information for their own gain constitutes a breach of the Insider Selling Defendants' fiduciary duties, the Company is entitled to the imposition of a constructive trust on any profits the Insider Selling Defendants obtained thereby.

**COUNT II**

**Against All Defendants for Breach of Fiduciary Duty**

78.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

79.     The Individual Defendants owed and owe WellCare fiduciary obligations.  By reason of their fiduciary relationships, the Individual Defendants owed and owe WellCare the highest obligation of good faith, fair dealing, loyalty and due care.

80.     The Individual Defendants, and each of them, violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, oversight, good faith and supervision.

81.     Each of the Individual Defendants had actual or constructive knowledge that they had caused the Company to improperly misrepresent the financial results of the Company and failed to correct the Company's publicly reported financial results and guidance.  These actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

82.     As a direct and proximate result of the Individual Defendants' failure to perform their fiduciary obligations, WellCare has sustained significant damages.  As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

83.     Plaintiff on behalf of WellCare has no adequate remedy at law.

## COUNT III

### Against All Defendants for Abuse of Control

84.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

85.     The Individual Defendants' misconduct alleged herein constituted an abuse of their ability to control and influence WellCare, for which they are legally responsible.

86.     As a direct and proximate result of the Individual Defendants' abuse of control, WellCare has sustained significant damages.

87.     As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

88.     Plaintiff on behalf of WellCare has no adequate remedy at law.

## COUNT IV

### Against All Defendants for Gross Mismanagement

89.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

90.     By their actions alleged herein, the Individual Defendants, either directly or through aiding and abetting, abandoned and abdicated their responsibilities and fiduciary duties with regard to prudently managing the assets and business of WellCare in a manner consistent with the operations of a publicly held corporation.

91.     As a direct and proximate result of the Individual Defendants' gross mismanagement and breaches of duty alleged herein, WellCare has sustained significant damages in excess of hundreds of millions of dollars.

92.     As a result of the misconduct and breaches of duty alleged herein, the Individual Defendants are liable to the Company.

93.     Plaintiff on behalf of WellCare has no adequate remedy at law.

COUNT V

**Against All Defendants for Waste of Corporate Assets**

94.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

95.     As a result of the improper accounting, and by failing to properly consider the interests of the Company and its public shareholders by failing to conduct proper supervision, defendants have caused WellCare to waste valuable corporate assets by paying incentive based bonuses to certain of its executive officers and incur potentially millions of dollars of legal liability and/or legal costs to defend defendants' unlawful actions.

96.     As a result of the waste of corporate assets, the Individual Defendants are liable to the Company.

97.     Plaintiff on behalf of WellCare has no adequate remedy at law.

COUNT VI

**Against All Defendants for Unjust Enrichment**

98.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

99.     By their wrongful acts and omissions, defendants were unjustly enriched at the expense of and to the detriment of WellCare.

100.     Plaintiff, as a shareholder and representative of WellCare, seeks restitution from these defendants, and each of them, and seeks an order of this Court disgorging all profits, benefits and other compensation obtained by these defendants, and each of them, from their wrongful conduct and fiduciary breaches.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment as follows:

A.     Against all of the Individual Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the Individual Defendants' breaches of fiduciary duties, abuse of control, gross mismanagement, waste of corporate assets and unjust enrichment;

- 36 -

B.      Directing WellCare to take all necessary actions to reform and improve their corporate governance and internal procedures to comply with applicable laws and to protect WellCare and its shareholders from a repeat of the damaging events that occurred during the Relevant Period, including, but not limited to, putting forward for shareholder vote resolutions for amendments to the company's By-Laws or Articles of Incorporation and taking such other action as may be necessary to place before shareholders for a vote the following Corporate Governance Policies:

1.      a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater shareholder input into the policies and guidelines of the Board;

2.      a provision to permit the shareholders of WellCare to nominate at least three candidates for election to the Board;

3.      appropriately test and then strengthen the internal audit and control functions; and

4.      control and limit insider stock selling;

C.      Extraordinary equitable and/or injunctive relief as permitted by law, equity and state statutory provisions sued hereunder, including attaching, impounding, imposing a constructive trust on or otherwise restricting the proceeds of defendants' trading activities or their other assets so as to assure that Plaintiff, on behalf of WellCare, has an effective remedy;

D.      Awarding to WellCare restitution from the defendants, and each of them, and ordering disgorgement of all profits, benefits and other compensation obtained by the defendants;

E.      Awarding to Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

F.      Granting such other and further relief as the Court deems just and proper.


## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: October 30, 2007

**BARKER RODEMS & COOK, P.A.**
400 N. Ashley Dr., Suite 2100
Tampa, Florida 33602
Tel: 813-489-1001
Fax: 813-489-1008

Chris A. Barker
Fla. Bar No. 885568
cbarker@barkerrodemsandcook.com

**FARUQI & FARUQI, LLP**
Emily C. Komlossy
Fla. Bar No. 007714
ekomlossy@faruqilaw.com
3595 Sheridan Street, Suite #206
Hollywood, Florida 33020
Tel: 954-239-0280
Fax: 954-239-0281

**GARDY & NOTIS, LLP**
Mark C. Gardy
440 Sylvan Avenue, Suite 110
Englewood Cliffs, New Jersey 07632
Tel: 201-567-7377
Fax: 201-567-7337

**FARUQI & FARUQI, LLP**
Nadeem Faruqi
369 Lexington Avenue, 10th Floor
New York, New York 10017
Tel: 212-983-9330
Fax: 212-983-9931

Attorneys for Plaintiff

<u>VERIFICATION</u>

I, Nadeem Faruqi, hereby declare as follows:

1.    I am a member of the law firm of Faruqi & Faruqi, LLP, counsel for plaintiff in the above-entitled action.  I have read the foregoing complaint and know the contents thereof.  I am informed and believe the matters therein are true and on that ground allege that the matters stated therein are true.

2.    I make this Verification because plaintiff is absent from the County of New York where I maintain my office.

Executed this 29th day of October, 2007, at New York, New York.

_____
Nadeem Faruqi